IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CARL SPENCER-BEY, 358035 | * | |
| v. | * | CIVIL ACTION NO. JFM-10-2100 |
| WARDEN FILBERT, et al. | * | |

\*\*\*

MEMORANDUM

I. Procedural History

Carl Spencer-Bey ("Spencer-Bey"), an inmate formerly housed at the Maryland Correctional Institution in Jessup ("MCIJ"), filed a court-ordered amended complaint on August 20, 2010,[1] complaining that: his pain medication was discontinued in June of 2010 in retaliation for his filing complaints; despite his medical condition he was assigned to a work detail and cited with an infraction for refusing to perform the work assignment; and no investigation was conducted into his medical situation before he was found guilty of the infraction, which caused a delay in his acceptance into a halfway house. ECF No. 3.

Spencer-Bey also complains that his case manager failed to communicate classification information to him, engaged in unnecessary verbal "chastisement" on two occasions, and falsely assessed his halfway house eligibility. Finally, he complains that he was transferred to MCIJ in retaliation for filing grievance complaints against case management personnel.[2] He seeks medical

---

[1] The facts set out in Spencer-Bey's original letter complaint filed on July 29, 2010, referenced an accident and the denial of medical care, specifically pain medication, while assigned to minimum security facilities. ECF No. 1. Spencer-Bey also complained about his assignment to a work detail given his medical condition and the issuance of an adjustment infraction for which he was cited after refusing to go on a job detail. He further took issue with the adjustment hearing process and alleged that prison staff impeded his filing an appeal of the disciplinary decision. Finally, Spencer-Bey complained about his classification status, alleging that he was improperly denied access to a half-way house and was transferred to MCIJ, action inconsistent with his security status. *Id.*

[2] By the time he filed his amended complaint Spencer-Bey had been transferred to the Jessup Pre-Release Unit.

"treatment" and monetary damages. *Id*.

II. Pending Motions

Medical defendant Obsu has filed a motion to dismiss or, in the alternative, for summary judgment. (ECF No. 20). State defendants Filbert, Pere, Campbell, and Richardson have filed a motion to dismiss or in the alternative, motion for summary judgment. (ECF No. 26). Spencer-Bey has filed a response.3 (ECF No. 28). The motions, which have been construed as motions for summary judgment, may be determined on the pleadings. *See* Local Rule 105.6. (D. Md. 2010). For reasons to follow, summary judgment shall be entered in favor of defendants.

III. Standard of Review

Fed. R. Civ. P. 56(c) states that:

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

As the Supreme Court has observed, "this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F.3d 514, 519 (4th Cir. 2003) (emphasis in original).

---

[3] In his response, dated February 22, 2011 and written from the regional prison hospital in Jessup, Maryland, Spencer-Bey contends that he: is on a hunger strike; has no access to his property and cannot properly respond; and has "still have not received and of the needed treatment or care for my injuries and pain…" He does not seek additional time to file a further response. The Division of Correction Inmate Locator indicates that Spencer-Bey is no longer confined. The Division of Correction Office of Data Processing confirms that Spencer-Bey was released from confinement on April 8, 2011.

A genuine issue of fact exists if a reasonable jury considering the evidence could return a verdict for the nonmoving party. *See Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir. 1994), *citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "Regardless of whether he may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact." *Bouchat,* 346 F.3d at 522, *citing Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). If this showing is made, the burden then shifts to the non-moving party who must convince the court that a triable issue does exist. *Id.* A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denial of [his] pleadings," but rather must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

Nonetheless, in considering the facts for the purposes of a summary judgment motion, the court will view the pleadings and material presented in the light most favorable to the nonmoving party. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). If the plaintiff's evidence does not raise a genuine issue as to a material fact, then summary judgment is proper for defendants. *See Anderson,* 477 U.S. at 249-50 (where evidence is not significantly probative, then summary judgment is proper).

With this standard of review in mind, the court shall discuss and analyze Spencer-Bey's medical, classification and retaliation claims *seriatim*.

IV.   Discussion

   1. Facts

Spencer-Bey has a history of heavy ETOH (alcohol) consumption, hypertension, bipolar disorder, and bronchitis. He was also involved in a motor vehicle accident on or about June 20, 2009

and treated at Johns Hopkins Hospital ("JHH"). Medical staff found no apparent injuries. Spencer-Bey was released from JHH with a prescription of Motrin for pain. When admitted to the Baltimore Central Booking and Intake Facility ("BCBIF") on or about June 29, 2009, Spencer-Bey complained of headache and neck pain and claimed the Motrin offered no relief.

From August 2009 to July 2010, Spencer-Bey repeated complained of back and neck pain from the June 2009 accident. The record shows that he was evaluated and prescribed various pain medication such as Motrin, Naprosyn, Ultram, Neurontin, Extra Strength Tylenol, and Elavil. Dr. Muleta Obsu, the staff physician at the Brockbridge Correctional Facility ("BCF")and Central Laundry Facility ("CLF")[4] and the only named medical defendant, affirms that different combinations of pain medications were tried in an attempt to find the proper regimen that would alleviate Spencer-Bey's pain. Obsu acknowledges discontinuing the Ultram medication on June 4, 2010, because of concern about the drug's potential effect on Spencer-Bey, given his diagnosed bipolar disorder. On June 7, 2010 Obsu added Tylenol to the Neurontin and Elavil regimen. According to the materials, Spencer-Bey refused to take the Neurontin during the month of June 2010.

X-rays of the cervical spine taken in August of 2009 showed no bony trauma and only minimal degenerative joint disease. On February 2010, Obsu submitted a request for a cervical spine MRI and orthopedic surgery consultation for Spencer-Bey. On March 2, 2010, the MRI study was conducted. It showed multilevel cervical spondylosis or degenerative joint disease without stenosis or disc herniation. Orthopedic surgeon Dr. Lawrence Manning evaluated Spencer-Bey on March 9, 2010. Manning noted that Spencer-Bey had marked limitation in the range of motion ("ROM") of his neck, but no cervical tenderness. His impression was that plaintiff had cervical and lumbar sprain. He recommended physical therapy and indicated that he would follow up with Spencer-Bey after

---

[4] CLF is now known as the Central Maryland Correctional Facility.

completion of physical therapy. On March 10, 2010, Obsu submitted a request for physical therapy. Additional requests for orthopedic surgery consultations were submitted on March 25 and April 21, 2010. The consultations were approved, but at that time there was no on-site physical therapy at either the BCF or CLF where Spencer-Bey was housed. Further consultation requests were submitted for Bon Secours Hospital ("BSH"). Only the physical therapy consultation was approved by the utilization review committee and Spencer-Bey received three weeks of therapy, twice a week, at BSH. On July 13, 2010, Spencer-Bey was transferred to MCIJ and was no longer under Dr. Obsu's care.

The base file record demonstrates that Spencer-Bey remained at MCIJ for two weeks. He was then transferred to the Jessup Pre-Release Unit and to three other facilities over the course of the following three months before he returned to the CLF on January 3, 2011. Defendants Richardson and Campbell deny that any retaliatory action, in the way of assessing his halfway house eligibility or prison relocation, was taken against Spencer-Bey for his filing of complaints. They assert that his transfer to MCIJ in July of 2010 occurred because he complained about his inability to receive narcotic pain medication at CLF and a decision was made to send Spencer-Bey to a facility that had a "24-7" medical department.[5]

Defendant Filbert, the warden of the Maryland Pre-Release System, defers to the medical expertise of medical staff regarding the diagnosis and treatment of inmates. Investigations into Spencer-Bey's administrative remedies showed that he was receiving adequate care while housed at CLF.

---

[5] The state defendants maintain that the infraction of which Spencer-Bey complains was not written by defendant Pere and that while Spencer-Bey was found guilty of refusing to work and to obey a direct order, he did not receive a segregation sentence, cell restriction or revocation of any good conduct credits. He was sanctioned with the loss of visits for 30 days. He appealed the decision in a timely manner,

2. Legal Analysis

In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992). Proof of an objectively serious medical condition, however, does not end the inquiry. The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter…becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), *quoting Farmer,* 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844.

---

but the adjustment decision was upheld by Warden Filbert.

Inmates do not have a constitutional right to the treatment of their choice, *Dean v. Coughlin*, 804 F.2d 207, 215 (2$^d$ Cir. 1986), and disagreements between medical staff and an inmate over the necessity for or extent of medical treatment do not rise to a constitutional injury. *See Estelle*, 429 U.S. at 105-06; *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *see also Fleming v. LeFevere*, 423 F.Supp.2d 1064, 1070-71 (C.D. Cal. 2006).[6]

There is no dispute that Spencer-Bey was involved in an automobile accident approximately ten days before he was initially confined. Pre-detention examination at JHH revealed no discernable injuries. Upon his arrival at the BCBIF he complained of neck and back pain. The extensive record shows, however, that during 2009-2010, Spencer-Bey was repeatedly evaluated, tested, and treated for those complaints while confined at various prison facilities, including CLF, now known as the Central Maryland Correctional Facility ("CMCF").[7] Various combinations of pain and nerve medication were prescribed to alleviate his pain[8] and radiology testing ordered by Obsu revealed no fracture or bony trauma, only mild degenerative joint disease. Spencer-Bey was seen by an orthopedic surgeon per Obsu's request. Dr. Manning opined that a lumbar or cervical sprain may be involved and ordered physical therapy. Physical therapy was conducted for a three-week period. The record shows that Dr. Obsu made an effort to diagnose and treat Spencer-Bey's complaints of neck and back pain while he was confined and that the physician's decisions regarding

---

[6] Title 42 U.S.C. § 1983 liability on the part of a supervisory defendant, such as Warden Filbert, requires a showing that: "(1) the supervisory defendants failed promptly to provide an inmate with needed medical care, (2) the supervisory defendants deliberately interfered with the prison doctors' performance, or (3) that supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations." *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990) (internal citations omitted); *see also Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir.1984) (supervisory liability for an inmate's beating by prison guards).

[7] Spencer-Bey's traffic history establishes that he was housed at CMCF from November 18, 2009 to July 13, 2010.

[8] According to the medical record, Spencer-Bey periodically refused pain medications such as Extra Strength Tylenol and Neurontin.

Spence-Bey's pain medication were made in consideration of the patient's other conditions, i.e. bipolar disorder. That Spencer-Bey disagreed with the medication regimen is of no constitutional moment. No deliberate indifference has been demonstrated.

In addition, Spencer-Bey has failed to show that any classification actions taken by case management staff were made in a retaliatory manner. His allegations are conclusory at best, *see Adams v. Rice*, 40 F.3dd 72, 74 (4th Cir. 1994) (claim of retaliation is not supported by conclusory allegations), and he has failed to provide facts showing that the exercise of his constitutional right was a substantial factor motivating the retaliation. *See, e.g.*, *Cochran v. Morris*, 73 F.3d 1310, 1318 (4th Cir. 1996). Spencer-Bey has no liberty interest in being assigned to a particular prison. *See Meachum v. Fano*, 427 U.S. 215, 224 (1976). Finally, with regard to his April 2010 adjustment proceeding, Spencer-Bey seemingly complains that he was falsely convicted of the infraction because no underlying investigation was conducted into his medical condition. He does not contend, however, that he was denied the minimum process and disciplinary standard of review to which he was entitled under *Wolff v. McDonnell*, 418 U.S. 539 (1974) and *Superintendent v. Hill,* 472 U.S. 445 (1985). No Fourteenth Amendment deprivation has been established.

V. Conclusion

For the aforementioned reasons, the court finds no constitutional violation associated with Spencer-Bey's medical care, classification, or adjustment history. Defendants' court-construed motions for summary judgment shall be granted. A separate Order follows.

May 9, 2011                       /s/
                                            J. Frederick Motz
                                            United States District Judge